**In re Kenneth H. MEAD, Debtor.**

**Kenneth H. Mead, Plaintiff,**

v.

**United States of America, et al., Defendant.**

**Bankruptcy No. 05–13930.
Adversary No. 06–14.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 28, 2007.

Order Denying Rehearing June 27, 2007.

---

Ronald Bergwerk, Jacksonville, FL, for Plaintiff.

Bruce T. Russell, U.S. Department of Justice, Washington, DC, Bonnie Riggi, NYS Department of Law, Albany, NY, Joseph A. Tringali, Assist. Atty General, West Palm Beach, FL, Jacob A. Brown, R. Raye Curry, Akerman Senterfitt, Edward H. Merrigan, Jacksonville, FL, Kevin M. Newman, Menter Rudin & Trivelpiece PC, Syracuse, NY, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the upon Plaintiff's Motion for Summary Judgment (the "Motion"). Partners Trust Bank, Financial Federal Credit, Inc., the New York State Department of Taxation and Finance, and the New York Environmental Protection and Spill Compensation Fund (the "New York Oil Spill Fund") filed responses in opposition to the Motion. Upon the pleadings and the arguments of the parties, the Court finds it appropriate to grant in part and deny in part Plaintiff's Motion for Summary Judgment.

### Background

### Florida Properties

Plaintiff owns four condominiums in Marion County Florida (the "Florida Properties"). Various creditors have obtained judgments against Plaintiff. The following documents have been recorded with the Clerk of Court in Marion County, Florida by the following parties on the following dates.

| Date | Description |
| --- | --- |
| January 11, 2001 | AmSouth Bank Judgment |
| July 20, 2001 | BSB Bank & Trust Company Judgment 1[1] |

1. On April 26, 2001 BSB Bank & Trust Company ("BSB") obtained a judgment against Plaintiff in New York State Supreme Court, County of Broome ("BSB Judgment 1"). On

| Date | Description |
|---|---|
| August 13, 2001 | BSB Bank & Trust Company Judgment 2 |
| January 16, 2002 | Florida DOR Warrant |
| July 30, 2002 | Truserve Judgment |
| November 20, 2002 | Notice of Federal Tax Lien |
| January 3, 2003 | Transcript of Judgment—State of New York[2] |
| May 5, 2004 | Financial Fed. Credit Judgment[3] |
| July 29, 2004 | First American Title Judgment |

## Virginia Property

Plaintiff owns an improved commercial lot in Virginia Beach, Virginia. The following documents have been recorded with the Commonwealth of Virginia.

| Date | Description |
|---|---|
| July 9, 2001 | the BSB Judgments |
| November 26, 2001 | AmSouth Judgment |
| April 29, 2002 | American Express Judgment |
| December 5, 2003 | Warrant—State of New York[4] |
| January 9, 2003 | Transcript of Judgment—State of New York[5] |
| February 11, 2003 | Notice of Federal Tax Lien |
| July 29, 2004 | Financial Fed. Credit Judgment |

On October 14, 2005 Plaintiff filed a voluntary petition under Chapter 11 in this Court. Plaintiff filed a complaint on January 11, 2006 seeking to determine the validity, priority or extent of a lien.

## Standard for Summary Judgment

Summary judgment under Rule 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2006)(incorporated by Fed. R. Bankr.P. 7056). A moving party bears the initial burden of showing a court that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607 (11 th Cir.1991). A moving party discharges its burden on a motion for summary judgment by " 'showing'—that is, pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. In determining whether the movant has met this initial burden, "the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997)(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Fitzpatrick v. City of Atlanta*, 2

---

June 5, 2001 BSB Bank & Trust Company obtained a judgment against Plaintiff in New York State Supreme Court, County of Broome ("BSB Judgment 2"). BSB Judgments 1 and 2 (collectively the "BSB Judgments") were filed with the Clerk of Court in Marion County on July 20, 2001 and August 13, 2001 respectively. Although BSB Bank & Trust Company has since become Partners Trust Bank, for purposes of clarity, the Court will use the term the BSB Judgments in the remainder of this Order.

2. The transcript was filed by the State of New York on behalf of the New York Oil Spill Fund.

3. On July 24, 2003 Financial Federal Credit Inc. ("Financial Federal") obtained a default judgment against Plaintiff (the "Financial Federal Judgment"). The Financial Federal Judgment was entered by the United States District Court for the Southern District of Texas. On March 24, 2004 Financial Federal obtained a Certification of Judgment for Registration in Another District from the District Court in Texas. The certification contains an attestation by the Clerk of Court that no notice of appeal had been filed for the Financial Federal Judgment and that it was final. On April 22, 2004 Financial Federal registered the Financial Federal Judgment with the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1963 (the "Registered Judgment"). On May 5, 2004 Financial Federal recorded a copy of the Registered Judgment in the public records of Marion County, Florida.

4. The warrant was filed by the State of New York State Department of Taxation and Finance.

5. This transcript was filed on behalf of the New York Oil Spill Fund.

F.3d 1112, 1115 (11th Cir.1993)). In other words, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a moving party satisfies this burden, then a nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

### Discussion

Plaintiff seeks to have the Court determine the validity and priority of liens filed by the various parties as to the Florida Properties and the Virginia Property. To the extent that the filings operate as liens, the priorities are in order of the date and time of recordation. The Court will separately address the Florida Properties and the Virginia Property.

### Florida Properties

AmSouth Bank did not file an answer to the Complaint. Plaintiff obtained a default against AmSouth Bank. Additionally, Plaintiff's affidavit attests that no debt is owed to AmSouth Bank. Am South did not file a response to the Motion for Summary Judgment. Because it is undisputed that no debt is owed to AmSouth Bank, AmSouth Bank does not have a lien against the Florida Properties.

Next in time is BSB. BSB attempted to domesticate the BSB Judgments pursuant to § 55.505, Florida's version of the Uniform Enforcement of Foreign Judgment Act (the "Florida UEFJA") which provides:

55.505. Notice of recording; prerequisite to enforcement

(1) At the time of the recording of a foreign judgment, the judgment creditor shall make and record with the clerk of the circuit court an affidavit setting forth the name, social security number, if known, and last known post office address of the judgment debtor and of the judgment creditor.

(2) Promptly upon the recording of the foreign judgment and the affidavit, the clerk shall mail notice of the recording of the foreign judgment, by registered mail with return receipt requested, to the judgment debtor at the address given in the affidavit and shall make a note of the mailing in the docket. The notice shall include the name and post office address of the judgment creditor and of the judgment creditor's attorney, if any, in this state. In addition, the judgment creditor may mail a notice of the recording of the judgment to the judgment debtor and may record proof of mailing with the clerk. The failure of the clerk to mail notice of recording will not affect the enforcement proceedings if proof of mailing by the judgment creditor has been recorded.

(3) No execution or other process for enforcement of a foreign judgment recorded hereunder shall issue until 30 days after the mailing of notice by the clerk and payment of a service charge of up to $37.50 to the clerk. When an action authorized in s. 55.509(1) is filed, it acts as an automatic stay of the effect of this section.

The following undisputed facts are set forth in Plaintiff's Motion for Summary Judgment and Partner Trust Bank's Ob-

jection to Plaintiff's Motion for Summary Judgment. The affidavits accompanying the BSB Judgments included three addresses for Plaintiff. The Clerk of Marion County sent notice of the BSB Judgments to those three addresses. BSB also mailed the notice to those three addresses. The first address used by BSB is that of a rental house Plaintiff owned but did not reside at. The second address was a former business address of an affiliated company, which closed in 1999. The third address was a former residence from which Plaintiff moved permanently in 1998. Plaintiff did not receive any notices of recording of the BSB Judgments.

After the filing of the BSB Judgments, Plaintiff disposed of several other properties in Marion County, Florida. BSB's counsel worked with Plaintiff and Am-South Bank in connection with the sales and received payments on behalf of BSB from the sales. In connection with these transactions, Plaintiff was aware of the BSB Judgments against the properties which he sold and acknowledged the same by allowing payments at closings to be made to BSB in exchange for partial releases of the BSB Judgments.

Debtor argues that because of ineffective mailing, the liens that would have otherwise been created by the recordation of the BSB Judgments had not become final by the petition date and are therefore inferior to the trustee's strong arm powers.[6] BSB argues that neither actual delivery nor utilization of residential addresses is required by the statute. BSB argues that by having worked with BSB and causing BSB to receive payments from the disposition of his other Florida properties, Plaintiff had actual notice of the domestication of the BSB Judgments and should

be estopped from challenging their validity.

Ordinarily, a judgment debtor must receive notice by mail of the recording of a foreign judgment. *See Cruz v. Desert Palace, Inc.,* 770 So.2d 306, 308 (Fla.3d Dist.Ct.App.2000) (holding that process for enforcement of a judgment creditor's foreign judgment could not be commenced where judgment debtor did not receive the prescribed notice of the recording of the judgment from either the clerk of court or from the judgment creditor); *Pan Am World Services, Inc. v. Abdell,* 522 So.2d 1177, 1179 (La. 4th Ct.App. 1988) (noting the insufficiency of "mere mailing to a supposed address" and stating that "notification by mail is sufficient but only where it is shown that [foreign judgment debtor] actually received the notice" in case construing the Louisiana version of the UEFJA). However, where a judgment debtor has actual notice of a foreign judgment and an opportunity to be heard and suffers no prejudice due to a judgment creditor's failure to comply with the procedural requirements set forth in the Florida Uniform Out–of–Country Foreign Money Judgment Recognition Act, the judgment is valid against the judgment debtor. *Frymer v. Brettschneider,* 696 So.2d 1266, 1268 (Fla. 4th Dist.Ct.App.1997). The purpose of the [Florida Uniform Out–of–Country Foreign Money–Judgment Recognition Act] is to ensure that a judgment debtor: 1) receives notice that someone is seeking to enforce a judgment against him in a Florida court and 2) to permit him to voice any objections he has to the enforcement of the judgment. *Id.* "Where the purpose of the statute has not been diminished and where due process has been afforded ... substantial compliance with a

---

**6.** Fla. Stat. § 55.507 provides that a foreign judgment "does not operate as a lien until 30

days after the mailing of notice by the clerk."

statute's notice procedures is sufficient." *Id.*

 The filing and mailing requirements set forth in the Florida UEFJA are identical to those set forth in the Florida Uniform Out–of–Country Foreign Money–Judgment Recognition Act. While Plaintiff may not have received notice of the recording of the BSB Judgments by mail, he had actual knowledge of them. Plaintiff had ample opportunity to voice objections to the BSB Judgments but instead permitted payments at closings in connection with the sale of other real property in Marion County to be made to BSB in exchange for partial releases of the BSB Judgments. The Court finds that the BSB Judgments are a lien on the Florida Properties.[7]

The fourth filing in time is the tax warrant from the Florida Department of Revenue ("FDOR"). Plaintiff concedes that the recordation of FDOR's warrant creates a valid lien to the extent there is any value in the Florida Properties beyond prior liens. The fifth filing in time is the Tru-Serve Judgment.[8] TruValue did not file an answer to the Complaint. Plaintiff obtained a default against TruValue. Additionally, Plaintiff asserts that the TruServe Judgment is a foreign judgment that seeks to comply with the Florida UEFJA. Plaintiff asserts that the affidavit accompanying the TruServe Judgment contains an incorrect address and therefore TruValue does not have a lien against the Florida Properties. Tru Value did not file a response to the Motion for Summary Judgment. Accordingly, it is undisputed that Tru Value does not have a lien against the Florida Properties.

The sixth filing in time is the notice of federal tax lien filed by the United States of America. Plaintiff concedes that this represents a valid lien to the extent there is any value in the Florida Properties beyond superior liens.

Seventh in priority is a transcript of judgment filed by the New York Oil Spill Fund. Plaintiff asserts that the New York Oil Spill Fund did not attempt to comply with the Florida UEFJA and does not therefore have a valid lien. Although the New York Oil Spill Fund filed an affidavit in response to Plaintiff's Motion for Summary Judgment, the affidavit specifically states that "[t]he Oil Spill Fund takes no position with respect to the assertions made with respect to the Florida Judgment." (New York Oil Spill Fund Aff. ¶ 7). Accordingly, it is undisputed that the State of New York Oil Spill Fund does not have a lien against the Florida Properties.[9]

 Eighth in time is the Financial Federal Judgment. Plaintiff argues that Financial Federal failed to comply with the Florida UEFJA because the affidavit filed and recorded with the Registered Judgment in the public records of Marion

---

7. To the extent that any of Plaintiff's creditors who filed judgments in the Marion County public records after the filing of the BSB Judgments but before Plaintiff had actual notice of the BSB Judgments would argue that their liens are superior to the BSB Judgments, that argument would fail. Those creditors were on notice of the previous filings. That the addresses set forth in the accompanying affidavits were ultimately determined to be incorrect does not affect their priority as to subsequent filings in the public records.

8. Truserve Corporation has now become Tru Value Company.

9. The Court notes that in its answer to the complaint the New York Oil Spill Fund set forth several paragraphs, which are denominated as "counterclaims". The purported counterclaims are nothing more than assertions of defensive matters and do not allege or form a basis for any relief apart from the principal claim. Accordingly, the "counterclaims" will be subsumed into the judgment on the principal claim.

County contained an incorrect post office address for Plaintiff. Financial Federal argues that because the Financial Federal Judgment was first registered with the United States District Court for the Middle District of Florida prior to its recording in Marion County, it was no longer a foreign judgment and compliance with the UEFJA was not required. Financial Federal asserts that by registering the Financial Federal Judgment in the District Court for the Middle District of Florida, the Financial Federal Judgment has the same force and effect as a judgment rendered by a Florida federal court.

Section 1963 of Chapter 28 of the United States Code provides in pertinent part:

A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

■ Pursuant to this section, a judgment entered by a federal district court in any other state, may be registered with the district court in another state and thereafter have the same effect as a judgment rendered by that district court. *See Leasco Response, Inc. v. Wright*, 99 F.3d 381, 382 (11th Cir.1996). When Financial Federal registered the Judgment entered

by the District Court in Texas with the District Court in Florida, the Financial Federal Judgment had the same effect as a judgment in the Florida District Court and could be enforced in the same manner as a judgment of the Florida District Court. Section 1962 of Chapter 28 of the United States Code provides in relevant part:

Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. This section does not apply to judgments entered in favor of the United States. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

This provision provides that judgments rendered by federal courts are to be a lien on property of the judgment debtor in the same manner as a judgment rendered by the state court of that state. *See B.A. Lott, Inc. v. Padgett*, 153 Fla. 304, 14 So.2d 667, 668 (1943) (stating that "[j]udgments of a United States District Court shall become and cease to be liens under the same conditions as judgments of state courts.") "Thus like a Florida judgment, a federal judgment becomes a lien on Florida property when it is recorded in a county's public records." *Burshan v. Nat'l*

*Union Fire Ins. Co.,* 805 So.2d 835, 839 (Fla. 4th Dist.Ct.App.2001)

Because the Registered Judgment is considered to be a judgment of a Florida federal court, section 55.10, Fla. Stat. governs the recording of the Registered Judgment and provides in pertinent part:

A judgment, order, or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation, provided that the judgment, order, or decree contains the address of the person who has a lien as a result of such judgment, order, or decree or a separate affidavit is recorded simultaneously with the judgment, order, or decree stating the address of the person who has a lien as a result of such judgment, order, or decree. A judgment, order, or decree does not become a lien on real property unless the address of the person who has a lien as a result of such judgment, order, or decree is contained in the judgment, order, or decree or an affidavit with such address is simultaneously recorded with the judgment, order, or decree

Although the statute requires that the judgment or accompanying affidavit contain the address of the judgment creditor, it does not require the address of the judgment debtor to effect a lien on the judgment debtor's real property. The affidavit accompanying the Registered Judgment[10], which was filed in the public records of Marion County contained Federal Financial's address. Any errors as to

Plaintiff's address in the accompanying affidavit do not affect the validity of the lien on the Florida Properties. When Financial Federal registered its Texas Federal Judgment with the Florida federal court, the Texas Judgment became a judgment of the Florida federal court pursuant to 28 U.S.C. § 1963. Upon the recording of the Registered Judgment in the Marion County public records, the Registered Judgment became a lien on the Florida Properties.

Although Plaintiff asserted that Financial Federal failed to comply with the Florida UEFJA, Plaintiff did not file a reply to Financial Federal's Response to the Motion for Summary Judgment and therefore did not address Financial Federal's argument that it has a valid lien on the Florida Properties because it complied with § 55.10. Stated another way, it is unclear to the Court whether it is Plaintiff's contention that Financial Federal was required to comply with the Florida UEFJA notwithstanding that it recorded the Registered Judgment pursuant to § 55.10. Accordingly, the Court finds it necessary to address that issue. Upon a review of the case law, the Court finds that Financial Federal was not required to comply with the Florida UEFJA.

██ While no court in Florida has, in a published opinion, addressed the specific issue of whether compliance with the UEFJA by a federal foreign judgment holder is required, courts in other states which have enacted the UEFJA have addressed the interplay between 18 U.S.C. § 1963 and the UEFJA.[11] All have held

---

10. Oddly enough, the accompanying affidavit was entitled Affidavit Pursuant to Uniform Enforcement of Foreign Judgments Act.

11. In the absence of controlling Florida precedent, courts may look to the decisions of other jurisdictions for guidance when interpreting Florida statutes based upon model or

uniform laws. *See Boettcher v. IMC Mortgage Co.,* 871 So.2d 1047, 1052 (Fla.2d Dist.Ct. App.2004); *Pasco County Sch. Bd. v. Florida Pub. Employees Relations Comm'n,* 353 So.2d 108, 116 (Fla. 1st Dist.Ct.App.1977) (stating that "in cases of first impression, it is helpful to look to cases from foreign jurisdictions

that federal foreign judgment holders may avail themselves of either procedure. *See Robinson v. First Wyoming Bank, N.A.,* 274 Mont. 307, 909 P.2d 689, 694–695 (1995) (holding that foreign federal judgment holder which registered its judgment pursuant to § 1963 and then recorded the registered judgment in Montana public records was not also required to comply with the Montana UEFJA) [12]; *Kemper Securities, Inc. v. Schultz,* 107 Ohio App.3d 258, 668 N.E.2d 554, 556 (1995) (noting that a federal judgment which was obtained in California and then registered with the United States District Court for the Southern District of Ohio, "became a judgment of the Southern District of Ohio" and was "enforceable in like manner as any other judgment of the Southern District of Ohio. Thus, Kemper did not need to comply with the notice provisions of the Foreign Judgments Act."); *In re Camp,* 310 B.R. 634 (Bankr.N.D.Ala.2004) (explaining that holders of foreign judgments in Alabama have several methods by which to domesticate a judgment and perfect a judgment lien, including the federal registration method in 28 U.S.C. § 1963 and the Alabama UEFJA.) [13] It is clear to the Court that the method for domesticating foreign judgments set forth in Florida's UEFJA is not the only method for domesticating foreign federal judgments in Flori-

da. The holders of judgments rendered by federal courts in other states may be registered with Florida federal courts pursuant to 28 U.S.C. § 1963 and recorded in the public records of Florida, thus creating a lien upon the judgment debtor's property, just the same as those judgments rendered by federal courts sitting in Florida. When Financial Federal registered its Texas federal Judgment with the United States District Court for the Middle District of Florida, it became a judgment of the Middle District of Florida and thus enforceable, in the same way as a judgment rendered by the Middle District of Florida. Upon the recording of the Registered Judgment in the Marion County public records, the Registered Judgment became a lien on the Florida Properties.

Ninth in time is the First American Title Insurance Judgment. Plaintiff concedes that this judgment represents a valid lien to the extent there is any value in the Florida Properties beyond superior liens.

### *The Virginia Property*

■ Virginia also follows the "first in time, first in right" doctrine. *United States v. Cameron,* 248 Va. 290, 293, 448 S.E.2d 410 (1989). Initially, Plaintiff notes that the documents recorded do not evidence compliance with Va.Code § 8.01–465.3. [14] Plaintiff asserts that each defen-

---

involving the interpretation of similar provisions in statutes of other states").

**12.** The provisions of the Montana UEFJA are substantively identical to the Florida UEFJA.

**13.** The Alabama UEFJA is substantively identical to the Florida's UEFJA.

**14.** Va.Code § 8.01–465.3 provides:

At the time of the filing of the foreign judgment, the judgment creditor or his lawyer shall make and file with the clerk of court an affidavit setting forth the name and last known post office address of the judgment debtor, and the judgment creditor.

Promptly upon the filing of the foreign judgment and the affidavit, the clerk shall mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall make a note of the mailing in the docket. The notice shall include the name and post office address of the judgment creditor and the judgment creditor's lawyer, if any, in the Commonwealth. In addition, the judgment creditor may mail a notice of the filing of the judgment to the judgment debtor and may file proof of mailing with the clerk. Lack of mailing notice of filing by the clerk shall not affect the enforcement proceedings if proof of mailing by the judgment creditor has been filed.

dant claiming a lien should be required to come forth with proof of mailing.

■ As with the Florida UEFJA, the purpose of the Virginia UEFJA is to put a judgment debtor on notice that a foreign judgment has been filed against him. While Plaintiff asserts that he did not receive any notices of the recording of foreign judgments as to the Florida Properties, he does not make a similar assertion with respect to the Virginia Property. In the absence of an assertion by Plaintiff that he did not receive any or some of the notices of the recording of foreign judgments as to the Virginia Property, the Court finds that requiring the various parties to come forth with proof of mailing would be an unnecessary exercise.

The BSB Judgments are the first two filings in time. They are valid liens on the Virginia Property. Third in time is the judgment filed by AmSouth Bank. AmSouth Bank did not file an answer to the Complaint. Plaintiff obtained a default against AmSouth Bank. Additionally, Plaintiff's affidavit attests that no debt is owed to AmSouth Bank. Am South did not file a response to the Motion for Summary Judgment. Because it is undisputed that no debt is owed to AmSouth Bank, AmSouth Bank does not have a lien against the Virginia Property.

Fourth in time is the American Express judgment. Plaintiff concedes that it creates a lien under Virginia law as a domestic judgment. Fifth in time is the warrant filed by the New York State Department of Taxation and Finance. In the affidavit to the Motion for Summary Judgment Plaintiff acknowledges that the warrant complies with the statute but attests that

the debt is disputed. On September 18, 2006 the Court entered Order on Objection to Claim 3 (the "Claim 3 Order") between the parties which provided that the claim of the New York State Department of Taxation and Finance would be allowed as a § 507(a)(8) priority claim in the amount of $50,000.00. The Court finds that the Claim 3 Order establishes $50,000.00 as the amount of Plaintiff's debt to the New York State Department of Taxation and Finance. Accordingly, to the extent there is any value beyond the proceeding liens, the New York State Department of Taxation and Finance has a $50,000.00 lien on the Virginia Property.[15]

Sixth, seventh, and eighth in time are respectively: the transcript filed by the New York Oil Spill Fund, the Notice of Federal Tax Lien, and the Financial Federal Credit Judgment, which Plaintiff concedes create a lien on the Virginia Property to the extent there is value beyond the proceeding liens. Upon the foregoing, it is

**ORDERED:**

Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

***ORDER DENYING MOTION FOR ORAL ARGUMENT ON PLAINTIFF'S MOTION FOR REHEARING AND DENYING PLAINTIFF'S MOTION FOR REHEARING***

This proceeding came before the Court upon Plaintiff's Motion for Rehearing and Plaintiff's Request for Oral Argument. On April 13, 2007 the Court entered an order in which it deferred ruling on Plaintiff's request for oral argument on Plaintiff's Motion for Rehearing until the time for

15. The Court notes that in its answer to the complaint the New York State Department of Taxation and Finance set forth a paragraph, which it denominated as a "counterclaim". The purported counterclaim is nothing more than an assertion of defensive matters and does not allege or form a basis for any relief apart from the principal claim. Accordingly, the "counterclaim" will be subsumed into the judgment on the principal claim.

filing a response to the Motion for Rehearing had expired. Partner's Trust Bank filed an objection to Plaintiff's Motion for Rehearing and Plaintiff filed a reply thereto. Having reviewed the pleadings, the Court finds that oral argument on Plaintiff's Motion for Rehearing would not be beneficial and will therefore deny that request.

The Court now turns to the Motion for Rehearing. Plaintiff filed this adversary proceeding seeking to determine the validity, priority or extent of liens held by various creditors as to certain real property in Marion County Florida owned by Plaintiff (the "Florida Properties"). Thereafter Plaintiff filed a motion for summary judgment. After the summary judgment motion was filed, but prior to the entry of an order by the Court, the case was converted from Chapter 11 to Chapter 7. By Order dated March 28, 2007 (the "Summary Judgment Order") the Court found that certain judgments obtained by BSB Bank & Trust Company in New York (the "BSB Judgments")[1] were a lien on the Florida Properties despite the listing of an incorrect address for the debtor in an affidavit accompanying the BSB Judgments.[2] Specifically the Court found that Plaintiff had actual notice of the BSB Judgments. (Summ. Judg. Order at 8.) The Court also found that those creditors who filed judgments in the Marion County public records after the filing of the BSB Judgments were on notice of the BSB Judgments, notwithstanding the fact that the addresses set forth in the accompanying affidavits were ultimately determined to be incorrect. (*Id.* at 8 n. 7.)

In his Motion for Rehearing, Plaintiff points out that he filed the adversary proceeding as a debtor-in-possession and that a debtor-in-possession has the power of a bona fide purchaser of real property under 11 U.S.C. § 544(a)(3). Plaintiff asserts that whether he had actual notice of the BSB Judgments is irrelevant and does not affect his avoidance powers as a hypothetical bona fide purchaser. Plaintiff seeks to have the Court revisit the issue of whether, under Florida law, recordation of a foreign judgment without compliance with the Florida Uniform Enforcement of Foreign Judgments Act gives constructive notice and thus prevents him from avoiding the BSB Judgments pursuant to § 544(a)(3).

Partner's Trust Bank objects to the relief sought on the bases that: 1) Plaintiff has no standing to file the Motion for Rehearing because upon conversion of the case, Plaintiff lost his standing to administer the case as the debtor-in-possession; 2) Even if Plaintiff has standing to file the Motion for Rehearing, he has not established grounds to grant the Motion; 3) Rule 9023 is not applicable; and 4) the doctrine of res judicata bars Plaintiff's new legal argument because Plaintiff could have but failed to include § 544(a)(3) as a separate cause of action in the Complaint when he did have standing to sue. The Court finds it necessary to only address Partner's Trust Bank's first two arguments.

 Paragraph (a) of § 323 of the Bankruptcy Code provides that "the trustee in a case under this title is the repre-

1. BSB was Partners Trust Bank's predecessor in interest.

2. The Florida version of the Uniform Enforcement of Foreign Judgment Act (the "Florida UEFJA"), Fla. Stat. § 55.505, provides that "[a]t the time of the recording of a foreign judgment, the judgment creditor shall make and record with the clerk of the circuit court an affidavit setting forth the name, social security number, if known, and last known post office address of the judgment debtor and of the judgment creditor."

sentative of the estate." Paragraph (b) of § 323 provides that "the trustee in a case under this title has capacity to sue and be sued." "As such, the only party who can pursue a claim on behalf of the bankruptcy estate is the trustee, thus the debtor lacks standing." *Griffin v. Beaty (In re Griffin)*, 330 B.R. 737, 740 (W.D.Ark.2005). Upon conversion of the instant case from Chapter 11 to Chapter 7, Plaintiff lost his standing to administer the bankruptcy case as the debtor-in-possession. Any arguments contesting the correctness of the Summary Judgment Order should have been raised by the Trustee, not Plaintiff. Accordingly, the Motion for Rehearing is due to be denied on that basis.

 Even if Plaintiff had standing to seek reconsideration of the Summary Judgment Order, he failed to establish grounds to grant the Motion to Reconsider. A party may move for reconsideration of orders issued by bankruptcy courts within ten days of the entry of an order or judgment. FED.R.CIV.P. 59. A court exercises its discretion when deciding whether to grant a 11 Rule 59(e) motion. *Wendy's Int'l, Inc. v. Nu–Cape Constr., Inc.*, 169 F.R.D. 680, 684 (M.D.Fla.1996). "A motion to alter or amend a judgment must demonstrate why the court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Id.* (quoting *Cover v. Wal–Mart Stores, Inc.*, 148 F.R.D. 294 (M.D.Fla. 1993)). "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and the conservation of scarce judicial resources." *Id.* (citing *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522 (E.D.Pa.1992)). A court can grant a motion for reconsideration when the moving party shows one of three criteria: (1) there is newly available evidence; (2) there

is an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or to prevent manifest injustice. *Id.* Plaintiff does not assert that there is newly available evidence or that there has been an intervening change in the controlling law. However, Plaintiff does contend that the Court did not fully address the issue of whether the defective filing by BSB gave constructive notice to subsequent purchasers and thus implicitly asserts that the Court erred in its application of the law.

Section 544(a)(3) of the Bankruptcy Code provides that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (West 2006). "Pursuant to [§ 544(a)(3) ] the trustee is given the rights and powers of a bona fide purchaser of real property from the debtor if at the time of the commencement of the case a hypothetical buyer could have obtained bona fide purchaser status, so the trustee can avoid any liens or conveyances that a bona fide purchaser could avoid ... The trustee under this subsection is deemed to have conducted a title search, paid value for the property, and perfected its interest as a legal title holder as of the date of the commencement of the case." Henry J. Sommer, 2 Collier Bankruptcy

Manual ¶ 544.08, at 544–16.1 (3d ed. rev. 2007).

■ While a trustee's actual knowledge is irrelevant under § 544(a)(3), *In re Sandy Ridge Oil Co.*, 807 F.2d 1332, 1336 (7th Cir.1986), the trustee cannot avoid a claim to which an otherwise bona fide purchaser would be subject because of constructive notice. *Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir.1991). *See also In re Hagendorfer*, 803 F.2d 647, 649 (11th Cir.1986) (holding that trustee is bound by erroneous, defective or incomplete matters of record). Whether or not constructive notice exists is determined by state law. In Florida a recorded document "is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record, if it had been examined, and inquiries suggested by it, duly prosecuted, would have disclosed." *Sapp v. Warner*, 105 Fla. 245, 141 So. 124, 127–128 (Fla.1932).

■ There are no reported cases which address the issue of whether the recordation of a foreign judgment whose accompanying affidavit contains an incorrect address for the judgment debtor constitutes constructive notice to potential purchasers. The Court finds that it does. As the Court intimated in the Summary Judgment Order, the purpose of the requirement in the Florida UEFJA of the recordation of an affidavit containing the judgment debtor's last known address is to ensure that a judgment debtor: 1) receives notice that someone is seeking to enforce a judgment against him in a Florida court and 2) to permit him to voice any objections he has to the enforcement of the judgment. While the affidavit accompanying the BSB Judgments contained an incorrect address for Plaintiff, they were nonetheless sufficient to put potential purchasers on notice of a prior claim. A hypothetical buyer of the Florida Properties could not have obtained bona fide purchaser status because he would have had constructive notice of the BSB Judgments.[3] Accordingly, the trustee could not have avoided the BSB Judgments as to the Florida Properties pursuant to § 544(a)(3). Upon the foregoing, it is

**ORDERED:**

1. Plaintiff's Motion for Oral Argument on Plaintiff's Motion for Rehearing is denied.

2. Plaintiff's Motion for Rehearing is denied.

---

**3.** Plaintiff cites several cases, which he asserts stand for the proposition that the recordation of a defective document in Florida imparts no notice of its contents to anyone, regardless of whether the defect is latent or patent. *See Reed v. Fain*, 145 So.2d 858 (Fla.1961); *Yaist v. United States*, 228 Ct.Cl. 281, 656 F.2d 616 (Ct. Claims 1981); *Lassiter v. Curtiss–Bright Co.*, 129 Fla. 728, 177 So. 201 (Fla.1937). The Court finds that the cases stand for the proposition that a document, which is not within the contemplation of the recording statute (i.e. a forged deed, an uncertified copy of an agreement, or an unacknowledged contract), does not constitute constructive notice. *See* 38 Fla. Jur.2d Notice and Notices § 12 (2007). The Court finds these cases unpersuasive to the issue at hand. Despite the incorrect address for Plaintiff in the affidavit accompanying the BSB Judgments, the BSB Judgments were within the contemplation of the recording statute.